Good morning. May it please the court. I'd like to reserve three minutes for rebuttal if I may. I'll try and keep track. Certainly. I'll try to remind you. Thank you. Your Honor, the core question here, the only question that was addressed by the California courts is whether there was a prima facie case of discrimination against women in this election of Mr. Polk's jury. As the Supreme Court reiterated in Johnson v. California when it reversed the same state court of appeal, demonstrating a prima facie case is not supposed to be onerous. The record just has to be sufficient to support an inference that discrimination has occurred. What the record shows here is that the prosecutor eliminated only women one after another until a Batson motion was made. Then he eliminated some men. But when the motion was temporarily withdrawn, he went back to eliminating only women. Although the jury pool was roughly half women by the time the prosecutor was done, men comprised more than 83% of the jury that convicted Mr. Polk. The prosecutor had eliminated women at twice the rate that he eliminated one-third of the men. The state court deemed these facts insufficient to even raise an inference of discrimination. Its analysis, I submit, is a very typical example of the California court's Batson jurisprudence, which Justice Liu recently pointed out. Maybe we could just jump you about five steps ahead. Please. I'm with you that you get de novo review. The state court got it wrong on the law. Let's just get down to the nitty-gritty. I think that's the only way you can do this. Your best juror is, who do you say, King Kaiser? Yes, I think so. Okay. Let's talk about her. I want to go back a half a step if you may. You've got a limited amount of time. Yes, sir. There's a lot of ground to cover. And I appreciate it. The two points that I'd make is, of course, you're reviewing the district court de novo. So I wouldn't be overlooking that. Let's assume that we reviewed de novo, and let's assume that there is an inference that the peremptory strikes were exercised wrongly. So the other preliminary point that I'd make is, at this point, if there was a prima facie case, there never was a proper third step hearing. And I don't see conceptually how the Batson claim can be denied. I think that the – what I submit is that the fact that the prosecutor took it on himself to review four of his challenges gives a basis, a compelling basis, for why the Batson claim should be granted. Without any analysis of whether those reasons have been shown to be protective. Oh, no. That's what I'm going to get to. Right. I think Judge Watford and I were wanting to direct you immediately to that point. Let's assume you win on standard review. Let's assume that the pattern of strikes was suspicious and that you have in the court below met the prima facie case. Now, the prosecutor, luckily in this case, for them, they have articulated their reasons for the challenges on the record. So we have those reasons now to review de novo. Your best juror, who you claim was struck on account of her gender, would then be – is it King-Kaiser? King-Kaiser. Abigail King-Kaiser. All right. Now, why were the reasons pretextual? I'm sorry to break in, Judge Witt. All of the reasons that were given for bumping Ms. King-Kaiser applied to men who were allowed to remain on the jury. The principal reason was that she was a teacher. The prosecutor said he always avoided seating teachers, social workers, and doctors, quote, if I can help it. That's what he said. But that wasn't true. Well, juror number nine, I mean, the prosecutor couldn't help it there. That juror had a very favorable profile, with the exception of being the teacher. Am I remembering the right guy? From Texas, Republican, NRA, gun-owning? No. No? No. Okay. Why? For one thing, he had been arrested twice. And one of the reasons given for bumping Dr. Singh was her encounters with law enforcement. Okay. A second reason why it's not true is that he submitted that he was very involved in religious activities, which was another of the reasons for bumping Ms. King-Kaiser. But the really fundamental answer is something, Judge Watford, that you said a couple of cases ago, which is that you can't – that if the reason itself is seen to be pretextual, and the reason it was given is I don't put teachers on the jury. All things being equal. No, that's not what – I'm sorry. Well, I mean, if I can help it. I take that to mean, you know, if I don't have something else in the record that suggests to me this is going to be a good juror for me, I don't want teachers. He didn't say that. He said, if I can help it, I don't put a juror – a teacher on the jury. I mean, that's a fairly categorical statement. Okay. At that point – Well, the Amnesty International thing. I just – I agree with you. Look, I'm with you on teacher, divinity, student. To me, that doesn't get it. But Amnesty International, you know, I can see where a prosecutor would think that those people, ACLU people, they would be good judges for him. Well, I agree with you. And there are two points, however, to be made in response to that. One is – and I believe you said this a couple of cases ago also, that if two reasons turn out to be pretextual, that is a very strong indication that the challenge was a discriminatory one. That's one thing. The second thing is that he allowed – he said, Amnesty International, ACLU. There was a male juror who was in the ACLU. And he passed him four times. I think my brother in the law says three times. He repeatedly passed that juror without challenge. Before the defense struck. Before the defense struck him. I mean – Well, Miller L. says that that is evidence. In Miller L., exactly the same thing. All it shows is that that particular juror wasn't as high a priority in terms of strikes, because the prosecution didn't run out of strikes, right? There were strikes left. I'm just not certain of that. Pretty sure that's the case. But I'm just saying, to me, the fact that he passed over several rounds, this juror who ultimately – he never had to make a decision about whether to leave on or not. I just don't think you get a lot from that. Now, one of the structures that struck male jurors – because I know you say he only struck four – was it four male jurors? He struck – Eight women, four men or something? Yes. I don't remember the exact numbers. But one of the – He struck nine women, four men. Okay. One of the struck male jurors was an ACLU person that checked the ACLU box. Right. So, I mean, I don't see, you know, just blatant evidence of pretext. And on its face, the Amnesty International reason seems to be, you know, one that you could credit. And again, I understand your analysis, Your Honor, but – I don't know that there was a large sampling of Amnesty International members in the jury. Or ACLU. Was anybody who was a member of the ACLU kept? When – I think they all got struck one way or another. Some – I believe that the only – that we're only talking about three jurors, right? To go back to what Judge Watford was saying, you know, maybe I read Miller-El wrong, but Miller-El seemed to say this is evidence. If the prosecutor repeatedly passes someone who has the same attribute, even though the defense ultimately challenges them, that is an indicia of pretext. That is evidence of discrimination. But let's call it a wash. Okay. What we have is two bad reasons, and one reason that's a wash. I think that that in itself is enough to support the two bad reasons being teacher – Teacher and divinity student, right. Divinity student. And, of course, Ms. Kingheiser was not alone. There was Dr. Singh. And the reasons given for bumping Dr. Singh really fare no better. He said – the prosecutor said he was concerned because Dr. Singh had been detained by the police after getting into a dispute with a cab driver. So she might be bitter about law enforcement. Is this the one whose sister worked as a PD? Yes. Which was the third reason he gave. First he gave two blatantly pretextual reasons. The first being she would be bitter about law enforcement. He left four men on the jury who had been arrested. Some arrested repeatedly. Some of whom had done time in jail. Apparently they wouldn't be bitter about law enforcement. Well, I think Dr. Singh specifically said she wasn't bitter. She thought the initial arrest was justified. It's just that when they looked at it, they realized that they had done wrong. Okay, so her sister is a public defender. And they talked, it sounded like, on a regular basis. Why is that not? Well, again, there was a male juror who talked on a regular basis with a friend who was a criminal defense attorney. Wait, wait, wait. On a regular basis? I thought the record was that he hadn't spoken with the guy for a long time. Yeah, I think it's somewhere in between those two. The important point, I think, is that, well, two important points. One is that I don't recall that juror being extensively questioned about it. The second is, again, you have two pretextual reasons. And even if there is one. Why is the fact that she's a doctor, why is that pretextual? Because he, the. No doctors got seated. We know that. Right. So why, I mean, again, I don't know. But you're making my point for me, Your Honor. He said doctors, teachers, social workers, I don't seat them if I can help it. He seats men who are doctors. He seats men. He does not seat men who are doctors. No, that's right. He seats men. I'm sorry. He seats men who are teachers. You know, I don't think I've ever before cited an unpublished opinion of this court. But Love v. Scribner, I'm not. It was an ER doctor who had worked in the ER office, and the prosecutor expressed some concern that Singh might second-guess medical expert testimony that the prosecutor may utilize. That seems reasonable. Well, it does until you look at the requirement that it has to have something to do with the actual case presented. There was no medical controversy here. There was no dispute that Ali Polk shot the victim to death. This wasn't a case that turned in any sense on forensics. This was a case of whether it was self-defense or not. And you think at the jury selection stage, I mean, forget about what the prosecution thought its case was going to look like. I guess the prosecutor knew that the defense wasn't going to call any medical experts. Well, the defense had to give a witness list just as the prosecution did. And, you know, they'd been through a preliminary hearing. You know, there's a fair amount of discovery, reciprocal discovery in California done. If that was going to be the defense, it would have surfaced long before that. That reasoning, Judge Winn, you're right, you know, in another case would make sense. Here it had nothing to do with this case, which, as, you know, this en banc court said in Kessler v. Canberra, and, you know, the court again reiterated in Ali v. Hickman, if it has nothing to do with the case being tried, the reason the justification given is inferentially pretextual. So, you know, we have, we've now covered two jurors, several clearly pretextual reasons. Maybe we can debate about whether there was any good reason for striking either of them. But the velocity, the magnitude of the pretextual reasons, and the pretextual reasons were always the leading ones he used. You know, his first reason is she's a teacher. Regarding Ms. Kingheiser, his first reason was, you know, she was picked up by the police in a dispute with a cab driver when he was talking about Dr. Singh. The weight of the pretextual reasons, I think, under this Court's precedent, under Supreme Court precedent, points very clearly to intentional discrimination in the selection of the jury. And it can't be forgotten that all of this is seen against the backdrop, we don't forget about the, I think, blatantly obvious pattern of the strikes, where he only struck women unless somebody called him on it. And we don't forget about the gross statistical disparity as well. Thank you for reminding me. I know when you're standing up there, time can get away from you. May it please the Court, John Deist for the people. If I may say at the outset, my hearing is kind of bad in a courtroom like this. I know we have microphones, but it's remarkable how many times I can't hear something even at this close range. So in any event. Well, please feel free to ask us to repeat our questions if you can't hear something. I will. I will follow the Court's lead. I certainly would like to focus on the fact that the defense attorney here clearly showed very little enthusiasm for this Batson motion. And it's remarkable. At the end of voir dire, the Batson motion had been made twice and withdrawn twice. At the conclusion of voir dire, there was nothing on the table. If the trial court had moved on, we would not have been here. But the trial judge said, I just want to make sure the record's perfectly clear. Defense attorney, I understand you withdrew your most recent Batson motion. And she said, yes, Your Honor. So again, if the court had moved on, we wouldn't be here. So why don't you just get to it. You're not going to persuade me that we're going to somehow avoid getting to Batson step three. I'd love to hear your response to counsel's argument as to the two jurors in particular that we focused on so far. Okay. The teacher was one reason. And the prosecutor said, if I can help it, I don't like teachers. And I think that teachers, that's one of those categories. First of all, the problem, tell me if I'm remembering this right, the problem is that King Kaiser really wasn't a teacher. Not really. I mean, S.A.T. tutor. It has nothing to do with her background. For what, one week she was teaching an S.A.T. class? She was a part-time S.A.T. tutor, something like that. So even if we credit, for reasons I don't understand, why prosecutors would just be biased against all teachers, regardless of their background, it has nothing to do with King Kaiser. So why don't we just start, we're just right off the bat, the very first reason he gives is just blatantly protection. Well, but, Your Honor, I think that you don't, he didn't start out by saying, first and foremost, this woman was a teacher and I never allow teachers on my jury. I think it was much more summary fashion, okay, let's see what I've got listed here. Teacher, I don't like. And I also think in the big picture, when a prosecutor forms a decision about a juror, look at the big picture. What does a prosecutor think when he hears amnesty international? No, no, let's go through them in order, okay? So teacher, first of all, that makes no sense. Why does a prosecutor not want teachers? It just doesn't make sense, it doesn't match up with her background. And then we do have magical juror number nine. He's a real teacher, right, been doing that for years, and he gets seated. So just that constellation of facts, don't we just have to put the teacher out, it just goes out the window. No, I don't think so. I think that some prosecutors simply form judgments about certain things. I'm saying it can't possibly be a justification for the strike of this juror on this record. It's not in itself. At best for you it's a wash. I would say it actually supports the notion that it's just protection, right on its face. I certainly think that it was the weakest of reasons. Well, let's go to the second one, a divinity student? He never articulates it, what the hell is the connection between her being a divinity student and her ability or inability to be a fair juror? I think a prosecutor who hears that a juror is a divinity student, a member of amnesty international, bells go off. Hang on before you get to the amnesty international, because I agree with you, that's the strongest point, and that's what I asked. But divinity student, just take that in isolation, what does that have to do, look, I'm a former prosecutor, I'm trying to figure out, why would a prosecutor just say, I don't want teachers, I don't want divinity students, what does that have to do with whether they can, I just don't get it, so help me. Well, I think the big picture, I mean, I can't help but think that a divinity student who's also a member of amnesty international, I think many prosecutors will say, that strikes me as a possible defense-oriented juror. That's all I can say, I mean, someone who studies divinity. Amnesty international, okay, I'm sort of with you on that. Right, and I mean. So you got. And we certainly have cases in which prosecutors have dismissed teachers. And the fact that the prosecutor did keep one teacher, as you pointed out, that teacher had some very good characteristics. He was from Texas, he was an NRA member, Republican, and so when a prosecutor has certain categories, when I've gone to buy a house at times, I've talked with a real estate agent and told them, I have to have this, this, this, and this. And as we look at houses, we have gone to places and I tell the agent, I love this house. And she says, but wait a minute, you said that such and such factor was a disqualifying factor. And I say, but the rest of the house is so great that that disqualifying factor becomes immaterial to me. And the prosecutor did say, I don't like teachers, I dismiss them if I can help it. Or phrasing like that. And so I think. Well, you've got to look at the person holistically. That's right. So she may have some positive attributes, the fact that it's Amnesty International, which I think the prosecutor equated with the ACLU. So that was a negative. And then background in teaching, although I agree with Judge Watford, SAT instructor isn't like juror number nine who was a teacher for a period of three years. But it's the combination that caused the peremptory strike. That's your best argument, right? Yes. And I also think that at this stage of the game, even if we you have said that you're going to focus or you're going to look at this case potentially on de novo review, one overriding fact is whatever the case posture, if it's federal review of a federal conviction, still deference is required on review of any bats in motion because it's so contingent on the courtroom. Who are we going to give deference to here? There is no there's no I could I would agree with you if the state trial court had made a determination at bats in step three. But it didn't. So there's nothing to defer. Well, but the trial the trial court's determination was that this bats in motion was was thoroughly without merit. And this trial court was wrong. In my view, I'm just telling you, you're not going to persuade me that the trial court got that right. Okay. Well, then I think it's a lucky thing for the people in this instance that reasons will proffer because I find the pattern of strikes incredibly problematic. So the trial judge is finding that there wasn't even a prima facie case. That's way off. But, Judge, if I can start with the first three strikes, we can agree that if a prosecutor dismisses three people on racial grounds, the first three people dismissed are black or Hispanic, that might have significance. But in the context of gender, the first three strikes inevitably are going to be two to one on gender grounds. Well, I'm talking about the pattern as a whole. You've got female, female, female, bats in motion, and then male, female, bats in motion renewed, male, male, male, and then bats in motion abandoned, female, female, female, female. I think that record speaks for itself. Well, but if you flip a coin 12 times, sometimes you'll get three heads, three tails. The patterns can be ---- Yeah, but certainly those first three when there are only four women seated out of the 12. But, Judge, think, one of those women specifically said, the DA's office really screwed up my daughter. I put all the blame or much of the blame for bat child problems on the DA's office. And so right off the start, if you've got the other two women we've outlined in the brief, there were very good reasons for each of those women. And furthermore, another woman at the end of the process specifically said she had a dispute with the DA's child welfare office, something like that. She was in an active dispute with the DA's office. So if we look at numbers, eight out of 12 challenges, if you disregard the two people who were in active disputes with the DA's office, that additionally, six out of ten, you might think in the racial context, that might set off an alarm. Was it six black jurors out of ten? Many courts might find a prima facie case of discrimination, but when it's gender, five out of ten is perfect neutrality. You can't get more neutral than five out of ten. And so if we're at six out of ten to say, look, 60% challenges to women, it doesn't make sense. Go ahead. The numbers simply are different, because when it's gender, six out of 12 is perfection. So if we go up to eight out of 12, that's barely changing the analysis at all. But to prevail, the defendant only needs to show a protection strike as to one. And so we've heard your discussion of Ms. Kingkaiser. What about Dr. Singh? Dr. Singh, okay, she had a sister in the public defender's office. She was a doctor, and there was medical testimony in the case. I agree, it wasn't crucial. It was a self-defense case. The pathologist testified about entrance and exit wounds. The proximity of the gun, there was no stipulation. Well, but it wasn't disputed. Not a big deal. The medical testimony did not appear to be a big deal. But sometimes prosecutors find medical testimony is no big deal, and lo and behold, somebody in the juror room says, well, wait a minute, I know something. Again, I'm not leaning heavily on that, because the prosecutor pretty much said, I don't like doctors. Not only are they do they second guess, but sometimes they don't get along with other jurors. Maybe the prosecutor thought she, I just don't like doctors. They think they're superior, or who knows what. I don't think it's inconceivable that a prosecutor could say I've had bad experiences with doctors, I don't like them on my jury. She spent 13 hours in detention over an unpaid limo bill. Now, that's a long time. She said she would harbor no bitterness. But, you know, I think anybody who wrongfully sat in a police station over an unpaid limo bill might somehow ‑‑ What about the, wasn't there someone who was detained for several days for some kind of a traffic infraction, and that person got seated? There was something like that. I mean, I just don't, that one, I think you're kind of on the shakiest ground when we do a comparative juror analysis. Because there were other jurors who got seated who had at least as egregious run-ins with the law enforcement system, right? Your Honor, that is true. And I can't explain it perfectly, but I think it is true. If you've been convicted of a crime and you know you were guilty, I think somehow the analysis changes. Because if I've been arrested and I know I did it, I don't necessarily harbor bitterness towards the system. But if I've been arrested wrongfully and I sit 13 hours in a police station, I think there's just a question of bitterness. And, again, the other characteristics of those other jurors, I don't have at my fingertips each of those other jurors. But, again, it's almost like we're looking for perfection. If the prosecutor's reasons don't align perfectly, then we have to presume that the prosecutor was racist. When the trial judge certainly didn't see any racism, the defense attorney barely saw any racism. Sexism, I think, is what you're referring to. That's what I mean, any improper challenge. It seems that we're looking at such after-the-fact analysis, focusing on the weaknesses of the prosecutor's reasons, when it simply was not an issue at all before the people who had the best perspective on it. Thank you, counsel. The exercise that Batson requires is to look back at the prosecutor's reasons and see whether they hold water on their own. And here we've seen that mostly they don't. I think that the retro, what we've been hearing from the State is a lot of retrospective, a lot of backfilling, which is that the challenge doesn't call for a mere exercise in thinking up any rational basis. If the stated reason doesn't hold up, its pretextual significance does not fade, because a trial judge or an appeals court can imagine a reason that might not have shown up to be false. Like being an NRA member, for instance. Well, we don't know which way that cuts. This was a self-defense case. And we know that people who are big into guns are big into the right to defend yourself and to defend others. Maybe that's unspeculative. I'm saying the whole business is speculative. What we have are the reasons that we're given. That's all we have, and they don't hold up. You know, the thing about flipping a coin, it's not going to end up 50-50. It's not going to end up 83-17. That's what's not going to happen. I know we're past the prima facie case stage, but it's still important to assess overall whether there was discrimination. I know you've got a couple of points to cover, but this is the thing that we always try to figure out. And you gave one explanation in the brief, which just didn't, I wonder if you have something better. What would be the motivation for a prosecutor in this case to not want women on the jury? Well, you know, the bottom line is that bigotry is rational. And one thing that I really can't speculate about is why the prosecutor looked at this case and said, I don't want women on the jury. Was it because it was a woman lawyer on the other side? Was it because that a lot of the evidence was that Mr. Polk was very attractive to women? I don't know. What I know is that the record facts, which is all we got, the facts of the strikes, the facts of the reasons that he gave, points ineluctably to a discriminatory intent. Thank you, counsel. You're over time.
judges: Noonan, Nguyen, Watford